NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARTIN BRESLIN, | Civil Action No. 11-0261-SDW |
| Plaintiff, | |
| v. | **OPINION** |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | March 22, 2012 |
| Defendant. | |

**WIGENTON, District Judge.**

Before the court is plaintiff Martin Breslin's ("Plaintiff" or "Breslin") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Cameron Elliot's ("ALJ") denial of Plaintiff's claim for Supplemental Security Income ("SSI") under 42 U.S.C. § 405(g). The Commissioner, pursuant to Local Civil Rule 9.1, seeks a judgment affirming the final decision that Plaintiff is not entitled to benefits pursuant to Title XVI, 42 U.S.C. §§ 1381-83, of the Social Security Act (the "Act").

This court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(g). Venue is proper under 28 U.S.C. § 1391(b).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court **AFFIRMS** the Commissioner's Decision.

**FACTUAL AND PROCEDURAL HISTORY**

On January 18, 2007, Plaintiff filed an application for SSI benefits alleging that he had been prevented from working since September 26, 2006, due to his medical conditions. (R. at 11, 94.) The application was initially denied and later denied upon reconsideration. (*Id*. at 11.) Subsequently, on April 8, 2008, Plaintiff filed a written request for a hearing before an ALJ. (*Id*.)

On July 24, 2009, a hearing was conducted before the ALJ. (*Id*. at 19-40.) On August 25, 2009, the ALJ denied Plaintiff's application in a written Decision ("ALJ Decision"). (*Id*.) Thereafter, Plaintiff requested a review of the ALJ's Decision with the Appeals Council, and on December 3, 2010, the Appeals Council affirmed the ALJ's Decision. (*Id*. at 1-4.) On January 15, 2011, Plaintiff filed an appeal with this Court challenging the denial of his request for SSI. (*See* Compl.)

  A.  **Background and Employment History**

Plaintiff was born in 1961, and was 48 years old at the time of his hearing before the ALJ. (R. at 15.) Plaintiff attended two years of college but did not receive a degree. (*Id*.) Plaintiff worked at the Meadowlands complex setting up souvenir stands from 1982 to 1998. (*Id*. at 25, 95.) Plaintiff reported that from 1990 until 1992, he was employed as a package handler for UPS. (*Id*. at 95.) Plaintiff was employed as a film expeditor at NBC in 1994 and 1995, where his responsibilities included packaging films for shipment to Rockerfeller Center. (*Id*. at 15, 26-27.) At this job, he lifted between 30 and 50 pounds and had to climb ladders. (*Id*. at 27.) Plaintiff testified that he was fired from the job at NBC for alcoholism related reasons. (*Id*.) Plaintiff last worked, according to his testimony, as a part of an AQL Decorating Service at a warehouse for about a year, until he left around 2000. (*Id*. at 24, 95.) This job entailed being on his feet all day, moving plastic and glass bottles, lifting up to 50 pounds, and loading trucks. (*Id*. at 24-25.)

B. **Medical History**

　　i.　**2003 Incident**

On December 25, 2003, Plaintiff was admitted to the Palisades Medical Center for alcohol intoxication and cardiopulmonary arrest. (*Id.* at 151.) Plaintiff was diagnosed with chronic heart failure, hepatic encephalopathy, acute respiratory failure, pneumonia, dehydration, gastrointestinal bleeding, and electrolyte imbalance. (*Id.* at 14, 151-52.) All of these diagnoses were related to acute alcohol poisoning, as Plaintiff had been drinking beer without eating for the prior three weeks before he collapsed in his bathroom. (*Id.* at 14, 155-56)  On the day of the collapse, Plaintiff had consumed six bottles of beer before collapsing in the bathroom. (*Id.* at 160.)  After being found, lying on the floor and unresponsive, Plaintiff was transported to the hospital where he went into cardiorespiratory arrest and had to be shocked twice in order to be revived. (*Id.* at 14, 156.)

Plaintiff received a renal consultation from Dr. Haroon Rashid who found that Plaintiff had "acute and severe life-threatening hyponatremia of a value of 108." (*Id.* at 160.) Plaintiff was intubated and put on a ventilator. (*Id.*) Plaintiff was treated with a saline drip along with a number of medications including antibiotics, Lasix, and Coumadin. (*Id.* at 14.) Radiological tests during the hospitalization period showed ascites, fatty liver, mild colonic distention, and chronic heart failure. (*Id.* at 14.)   However, these tests showed that the heart failure was gradually improving and Plaintiff was discharged in good condition on March 21, 2004. (*Id.* at 14, 152.)

　　ii.　**Weight**

Plaintiff alleges that obesity should be a factor.  A report from the Palisades Medical Center from December 25, 2003, stated that Plaintiff was five feet and nine inches tall and listed Plaintiff's weight as 250 pounds. (*Id.* at 155; Pl.'s Br. 10.) However, Defendant notes that in his disability report, submitted as part of his January 18, 2007, claim for benefits, Plaintiff reported

that he was six feet tall, and listed his weight as being 175 pounds. (R. at 93; Def.'s Br. 12.) In addition, Defendant argues that when Plaintiff saw Dr. Ashraf K. Faltas ("Dr. Faltas") in March 2007, he was measured at a height of six feet and a weight of 202 pounds, (R. at 260; Def.'s Br. 12) and when Plaintiff returned to Dr. Faltas in January 2008, he was measured at the same height of six feet and his weight was 199 pounds. (R. at 277; Def.'s Br. 12.)

### iii. Consultative Examination

On March 20, 2007, Plaintiff underwent a consultative examination with Dr. Faltas. (*Id*. at 14, 259.) Plaintiff claimed to have difficulty resting his legs, fatigue, and shortness of breath. (*Id*.) Dr. Faltas stated that there was no support in his examination or investigation for the alleged poor circulation in Plaintiff's legs. (*Id*.) Plaintiff had previously been diagnosed with a pitting edema and multiple heart-related abnormalities in December 2003 following the incident discussed *supra*, when he was admitted to the Palisades Medical Center. (*Id*. at 162, 252.) Dr. Faltas found Plaintiff's extremities to be without cyanosis, clubbing, or edema and Plaintiff's heart to be normal with no gallops, murmurs, or thrills. (*Id*. at 260.) Plaintiff had full range of motion and full power along with gait and gross manipulation that were "within normal" limits without the need for any assistive devices. (*Id*.) Dr. Faltas noted that his overall physical examination of Plaintiff was "'completely unremarkable' except for atrial fibrillation and atrial flutter shown on EKG." (*Id*. at 14, 260.)

In his report to the Division of Disability Determination Services, Dr. Faltas noted that Plaintiff had a twenty-year history of chronic alcohol consumption. (*Id*. at 259.) Plaintiff testified before the ALJ that he last drank alcohol the day he was admitted to the hospital in 2003. (*Id*. at 15, 28.) However, on March 20, 2007, Plaintiff told Dr. Faltas that he was drinking one pint of alcohol and a six-pack of beer every day. (*Id*. at 259.)

After another visit on January 3, 2008, Dr. Faltas noted that Plaintiff "was diagnosed with cardiomyopathy and cardiac arrhythmia secondary to alcohol consumption." (*Id*. at 276.) Dr. Faltas further noted that Plaintiff complained of "easy fatigability and dyspnea" as well as "pain in the legs bilaterally" which Plaintiff claimed had been previously diagnosed as poor circulation. (*Id.*)  However, Dr. Faltas stated that plaintiff "had never had a work-up done to confirm such a diagnosis," and he did not change any of Plaintiff's medications. (*Id.*)  Further, Plaintiff told Dr. Faltas that he had quit smoking and drinking alcohol since his last visit in March 2007. (*Id.*)

    iv.    **Residual Functional Capacity**

On March 27, 2007, Dr. Harvey Silver ("Dr. Silver") a state agency physician, reviewed the medical record and completed a Physical Residual Functional Capacity Assessment ("Assessment"). (*Id*. at 266-273)  In executing the Assessment, Dr. Silver concluded that Plaintiff could occasionally lift and/or carry twenty pounds and that he could frequently lift and/or carry ten pounds. (*Id*. at 267.)  Dr. Silver also concluded that Plaintiff could stand and/or walk for at least two hours in an eight-hour workday, and also noted that Plaintiff could sit for about four hours over the same period. (*Id.*)  Further, Dr. Silver noted that Plaintiff was not limited with regard to pushing and pulling other than the lifting and carrying restrictions noted above. (*Id.*) Plaintiff could occasionally work in any posture, though he could never climb ladders, ropes, or scaffolding. (*Id*. at 268.)  Dr. Silver also reported that Plaintiff was only environmentally limited in that he had to avoid concentrated exposure to hazards, such as machinery and heights. (*Id*. at 270.) Dr. Silver opined that the symptoms which Plaintiff alleged produced his physical limitations were "due to alcoholic cardiomyopathy." (*Id*. at 271.)  He stated that the "severity of symptoms [we]re proportionate to [the] above diagnosis," and that the "severity of symptoms are consistent with medical and non medical evidence." (*Id.*)

### v. Plaintiff's Testimony

On July 24, 2009, Plaintiff testified before the ALJ. (*Id*. at 11.) Plaintiff testified that he last drank alcohol on December 24, 2003, – the "same day" he was admitted to the hospital.[1] (*Id.* at 28.) Plaintiff testified that he was in the hospital for six weeks followed by a stint in a different hospital in January 2007 or January 2008. (*Id*. at 28-29.) Plaintiff testified that he has poor circulation in his legs, gets fatigued very easily, and gets lightheaded when bending over repeatedly. (*Id*. at 30.) Plaintiff testified that if he sits for longer than approximately ten minutes he loses feeling in his legs, which can be alleviated by stretching and rubbing his legs and changing his sitting position. (*Id*. at 31-32.) Plaintiff also testified that he: 1) could walk at most six city blocks before having to sit and rest; 2) could stand about twenty minutes if he's able to shift his weight; and 3) could lift and carry 35 pounds at most, but less if forced to lift and carry repeatedly. (R. at 33-34.) Plaintiff stated that he no longer drives on the recommendation of his treating physician, Dr. Samir Amin ("Dr. Amin"), due to the occasional loss of feeling in his legs. (*Id*. at 37.) However, Plaintiff testified that Dr. Amin had not changed his medication in a long time and that currently he has no problems using his arms or hands. (*Id*. at 35.) Plaintiff also stated that he no longer takes public transportation because of fear of bumping into people and falling down. (*Id*. at 38.)

**LEGAL STANDARD**

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a

---

[1] Plaintiff was actually admitted to the hospital on December 25, 2003. (R. at 151.)

reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This court is required to give substantial weight and deference to the ALJ's findings. *Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has

7

been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

**DISCUSSION**

An individual will be considered disabled under the Act if he or she is cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C.A § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A). Plaintiff must show that the "medical signs and findings" related to his ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C.A § 423(d)(5)(A).

The Social Security Administration utilizes a five-step sequential analysis to determine disability under the Act. *Cruz*, 244 F. App'x at 480 (citing 20 C.F.R. § 404.1520 (a)(4)(i)-(v)). The United States Supreme Court describes the evaluation process as follows:

> The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits.

8

*Sullivan v. Zebley*, 493 U.S. 521, 525-26 (1990).  The burden of persuasion lies with the claimant in the first four steps.  *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).  Once the claimant shows that the impairment prevents him from performing his past work, the burden shifts to the Commissioner to demonstrate "that the claimant still retains a residual functional capacity to perform some alternative, substantial, gainful activity present in the national economy."  *Id.* (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)).

In this instant case, the ALJ denied Plaintiff SSI at step five, ultimately determining that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 17.)   On appeal, Plaintiff argues that 1) the ALJ's residual functional capacity ("RFC") conclusion improperly evaluated the medical evidence; and 2) the ALJ erred by failing to require the testimony of a vocational expert to testify as to how Plaintiff's non-exertional impairments would limit his occupational base. (*See generally*, Pl.'s Br.)

The Commissioner, however, argues that: 1) the ALJ's Decision is supported by substantial evidence; 2) the ALJ properly evaluated medical evidence and determined that Plaintiff could perform a range of light work; 3) the ALJ properly evaluated Plaintiff's credibility; and 4) the ALJ properly used the Medical-Vocational Guidelines to determine that Plaintiff could do other work. (*See generally*, Def.'s Br.)  For the reasons expressed below, this Court affirms the ALJ's Decision because substantial evidence supports the ALJ's findings.

**A. Step One**

Substantial gainful activity is work that involves significant physical or mental activities and is done for pay or profit.  *See* 20 C.F.R. § 416.972(a)-(b).  If a claimant is found to be engaged in substantial gainful activity, the disability claim will be denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  In the instant matter, the ALJ determined that Plaintiff had not

engaged in any substantial gainful activity since January 18, 2007, the date of his SSI application. (R. at 13.)

## B. Step Two

In determining step two, the ALJ should consider the symptoms and the extent to which they can reasonably be accepted with objective medical evidence as well as other relevant evidence. *See* 20 C.F.R. § 416.929. Under the applicable regulations, a severe impairment exists only if it significantly restricts the Plaintiff's physical or mental ability to do "basic work activities." 20 C.F.R. § 404.1521(b).

In the instant matter, at step two, the ALJ determined that Plaintiff has the severe impairment of chronic heart failure limiting his physical ability to do basic work. (R. at 13.) The ALJ determined that Plaintiff's other ailments "were generally acute and not expected to last at least 12 months, or claimant has recovered from them." (*Id.*) Additionally, the ALJ found that there was no medical evidence to support Plaintiff's claims of bad circulation in his legs or a myocardial infarction. (*Id.*)

## C. Step Three

### a. Whether Impairment Matches or is Equivalent to a Listed Impairment

At step three, the ALJ must "compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work." *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x. 376, 379 (3d Cir. 2004). When a claimant's impairments meet or equal a listing, "disability is conclusively established and the claimant is awarded benefits." *Knepp*, 204 F.3d at 85. The Third Circuit requires the ALJ to "fully develop the record and explain his findings at step three." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). The ALJ must issue more than just a conclusory statement that a claimant does not meet the listings. *See Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (*citing Burnett,* 220 F.3d at

119-20). However, "*Burnett* 'does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.'" *Padilla v. Comm'r of Soc. Sec.*, No. 09-2897, 2010 WL 2346650 at *5 (D.N.J. June 9, 2010) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

In the instant matter, at step three, the ALJ determined that Plaintiff did not have an impairment that matched or was equivalent to a listed impairment. (R. at 13.) In assessing whether the Plaintiff had an impairment that would match a listed impairment, the ALJ analyzed and compared Plaintiff's medical evidence in accordance with the applicable listings in 20 C.F.R. pt. 404 subpart P appendix. 1. 20 C.F.R. § 404.1525. The ALJ found that there was "insufficient evidence to establish the requirements of listing 4.02, pertaining to chronic heart failure." (R. at 13.)

### b. Determination of RFC

If an impairment is found to not meet or equal a listed impairment, the ALJ must determine Plaintiff's RFC before moving on to the fourth step of the analysis. *See* 20 C.F.R. 404.1520(e). In making this determination the ALJ must consider all of Plaintiff's impairments, including those that are not severe. *See* 20 C.F.R. § 404.1520(e) (2012); 20 C.F.R. § 404.1545; and SSR 96-8. When considering Plaintiff's symptoms, the ALJ must first determine whether there are underlying medically acceptable clinical and laboratory diagnostic techniques that could reasonably demonstrate Plaintiff's pain or other symptoms. *See* 20 C.F.R. § 404.1527. Then the ALJ must evaluate the intensity, persistence, and restrictive effects of Plaintiff's symptoms to determine how much they limit Plaintiff's ability to do basic work activities*. Id.* Whenever statements about the intensity, persistence, and restrictive effects of Plaintiff's symptoms are not corroborated by medical evidence, the ALJ must determine the credibility of the statements based on a consideration of the entire record. *Id.* The Commissioner has the discretion to determine

11

credibility and independently make a judgment based on medical findings and other evidence related to Plaintiff's symptoms. *See La Corte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988).

In the instant matter, the ALJ determined that Plaintiff had the RFC "to perform the full range of light work as defined by 20 C.F.R. § 416.967(a)" with specific exceptions regarding standing and walking more than two hours a day and avoiding concentrated exposure to hazards. (R. at 13.) In addition, the ALJ made an exception stating that Plaintiff was "limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs, and cannot climb ladders ropes, or scaffolds." (*Id*.)

In making his decision, the ALJ relied on the following: 1) Plaintiff stated in his Function Reports that he can walk 2-3 blocks at a time, lift 25 pounds but not repeatedly, and cannot bend." (*Id*. at 15, 126, 145);[2] 2) Plaintiff's consultative examination was "completely unremarkable" and suggested no limitations (*Id*. at 16, 260); 3) Plaintiff was not credible in his allegations of poor circulation in his legs and a prior heart attack (*Id*. at 16); and 4) Plaintiff was not credible and inconsistent regarding his drinking. (*Id*.)[3]

In light of the evidence relied upon by the ALJ, this Court concludes that the ALJ properly determined Plaintiff's RFC.[4]

**D. Step Four**

At step four, the Commissioner must determine whether Plaintiff has the RFC to fulfill the requirements of his past relevant work. *See* 20 C.F.R. § 404.1520(f). The term "past relevant

---

[2] Plaintiff also "testified that he can walk six blocks, sit for 10 minutes at a time, lift 35 pounds but not repeatedly, and cannot bend without risk of passing out." (R. at 16, 31-34.)

[3] Dr. Faltas also stated that Plaintiff had "cardiomyopathy and cardiac arrhythmia *secondary* to alcohol consumption." (R. at 276) (emphasis added).

[4] Plaintiff alleges in his brief that Plaintiff was obese and the ALJ was required to consider this as a factor and did not do so. (Pl.'s Br. 10.) These allegations are unsustainable given that the only documented example of Plaintiff in an obese range is a report from the Palisades Medical Center, which was filled out in 2003, before the timeframe to be considered for Plaintiff's SSI application. (R. at 155; *see also* Def.'s Br. 12.)

work" means work performed, either as Plaintiff performed it or as it is generally performed in the national economy, within the last fifteen years or fifteen years prior to the date that disability must be established. 20 C.F.R. § 404.1560(b). If Plaintiff does not have the RFC to perform any past relevant work, the analysis proceeds to the fifth step. 20 C.F.R. § 404.1520.

At step four, in this case, the ALJ properly determined that Plaintiff is unable to perform any past relevant work pursuant to 20 C.F.R. § 404.1565. The ALJ noted that Plaintiff has the past relevant work as a film expeditor. (R. at 16.) As Plaintiff is limited physically with regard to exertion and exposure to hazards, the skills required by that job are outside his RFC. Therefore, the Commissioner correctly found that Plaintiff is unable to perform any past relevant work.

### E. Step Five

At the fifth step, the ALJ must determine whether Plaintiff is able to do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. 404.1520(f),(g). If Plaintiff can do other work, he is not disabled. (*Id.*) If the claimant establishes that his impairment prevents him from performing any of his past work, the burden shifts to the Commissioner at step five to determine whether the claimant is capable of performing alternative, substantial, gainful, activity present in the national economy. *See* 20 C.F.R. § 416.920(g); *Kangas*, 823 F.2d at 777.

The ALJ has to consider whether Plaintiff's limitations are exertional or non-exertional. *See* C.F.R. § 404.1569a(a). A limitation is exertional if it affects the Plaintiff's "ability to meet the strength demands of [a job]" such as "sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* A limitation is non-exertional if it affects the Plaintiff's "ability to meet the demands of [a job] other than strength demands." *Id.* If the limitations are only exertional, the ALJ can refer to the Medical-Vocational Guidelines to determine whether Plaintiff can perform any other job in the national economy. *See* C.F.R. pt. 404, subpart P, app. 2; 20 C.F.R.

13

404.1520(f),(g). However, if there are both exertional and non-exertional limitations, the ALJ cannot depend on the guidelines to determine whether there are jobs in the national economy that Plaintiff can perform. *See Sykes v. Apfel*, 228 F.3d 259, 269 (3d Cir. 2000).

Under Section 416.963, a younger person, under the age of fifty, with at least a high school education and previous work experience, is not disabled unless the ALJ finds particular limitations specific to the individual. *See* 20 C.F.R. §§ 416.963(c), 416.964(b)(4), 416.965. An ALJ must make an "assessment of factors such as the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base." 20 C.F.R. pt. 404, subpart P, app. 2 § 201.00(h)(3) (2012). Additionally, this finding "requires an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust." *Id.*

Here, the ALJ found that although there were exceptions to Plaintiff's ability to perform a full range of light work, a finding of "not disabled" was still warranted under Medical-Vocational Rule 202.21. (R. at 17.) The ALJ found that Plaintiff had only exertional limitations and that "the additional limitations have little effect on the unskilled light or sedentary occupational bases." (*Id.*) The ALJ noted that restrictions on climbing and unusual hazards do not significantly erode the sedentary occupational base as per SSR's 96-9p. (R. at 17.) The ALJ further elaborated that "stooping is required occasionally, at most, and limitations on climbing ropes, ladders, and scaffolds, balancing, kneeling, crouching, and crawling do not erode the sedentary occupational base." (SSR 96-9p, R. at 17.)

Plaintiff argues that the ALJ erred by not requiring the testimony of a vocational expert to testify as to how Plaintiff's non-exertional impairments would limit his occupational base. (Pl.'s Br. 12.) The ALJ stated that Plaintiff is capable of performing sedentary, unskilled jobs such as

14

surveillance system monitor, call-out operator, telephone quotation clerk, and scoreboard operator. (R. at 17.) The ALJ properly applied Medical-Vocational Rule 202.21 and was not required to give examples of jobs which Plaintiff was able to perform. However, contrary to Plaintiff's assertion, the fact that he did so does not constitute the ALJ substituting his own testimony for that of a vocational expert. (*See* Pl.'s Br. 12.) In addition, the ALJ was considering exertional limitations and did not find any relevant non-exertional limitations. (*See* R. at 17.) As such, the ALJ's use of the Medical-Vocational Guidelines and determination that Plaintiff could perform other work was warranted.

**CONCLUSION**

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's Decision. Accordingly, the Court **AFFIRMS** the ALJ's Decision.

s/Susan D. Wigenton, U.S.D.J.

Orig:	Clerk
Cc:	parties